JAMES F. WHALEN ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.[1]

Argued February 4—decided March 31, 1959

---

[1] Mellitz, J., took no part in the consideration or decision of this case. By agreement of counsel it was decided by four judges.

*Austin K. Wolf,* with whom, on the brief, was *Martin F. Wolf,* for the appellants (plaintiffs).

*Raymond W. Beckwith,* with whom, on the brief, was *Norman K. Parsells,* for the appellee (named defendant).

*Samuel E. Friedman,* with whom was *Arthur Levy, Jr.,* for the appellee (defendant Rostro, Inc.).

MURPHY, J. The plaintiffs have appealed from the judgment of the Court of Common Pleas dismissing their appeal from the action of the defendant town plan and zoning commission in changing the zone of a five-acre tract on Stratfield Road and Fairfield Woods Road in Fairfield from residence R-3 to neighborhood business 1. The plaintiffs are the owners of, and reside on, abutting property which will be adversely affected by the change, and they are therefore aggrieved.

Stratfield Road is a segment of state highway route 59 which connects Bridgeport and Easton. It runs north and south. Fairfield Woods Road extends westerly from Church Hill Road across Stratfield Road to Black Rock Turnpike, one and one-third miles away. Fairfield Woods Road is part of the direct route from the Stratfield section of Fairfield to the business center. See *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 418,

143 A.2d 639. The Merritt Parkway interchange serving Easton, Stratfield and the west side of Bridgeport is less than two miles north of Fairfield Woods Road on route 59.

A relatively small area on each of the four corners at the intersection of Stratfield Road and Fairfield Woods Road is zoned for business. At the northeast corner there is a supermarket. On the southeast corner there are a drugstore, a grocery and meat market, a barber shop, a beauty parlor and a cleaning agency. The southwest corner is occupied by a lunchroom. A hardware store and a gasoline station at the northwest corner, completing the business establishments, are on a lot which fronts 130 feet, approximately, on each road. The five-acre tract for which the change of zone was sought is owned by Rostro, Inc., a corporation owned and controlled by the owner of the hardware store and the gasoline station property. The tract abuts this property on the north and west. The tract has a frontage of 520 feet on Stratfield Road and a projecting tongue of land 92 feet wide on Fairfield Woods Road. The northerly line runs along the southerly boundary of Owen Fish Park, a recreational area, for a distance of 575 feet. The westerly line follows the course of the rear lot lines of residential property to the west, including that owned by the plaintiffs.

The Stratfield section of Fairfield is zoned for one-family dwellings and, with the exception of a very few two-family houses which antedated the adoption of zoning, is occupied almost exclusively by single houses. It has experienced an almost phenomenal growth in the last ten years. The biggest percentage of this expansion has been in the area to the north, northeast and northwest of the inter-

section in question. There are two schools in the immediate neighborhood. Unquowa School, a private school on Stratfield Road, is a block and a half south of the intersection. Stratfield School, a public elementary school, is on Melville Avenue one block west of Stratfield Road and a short distance south of Fairfield Woods Road. The congregation of a Bridgeport synagogue owns five and one-half acres adjoining Owen Fish Park on the north. It has plans for building a religious school accommodating 300 children and also intends to build a synagogue costing three quarters of a million dollars. Stratfield Road in this section consists of a bituminous surfaced roadway twenty-five feet wide with shoulders on both sides but no sidewalks. The road narrows considerably at Owen Fish Park. A traffic light controls traffic through the intersection with Fairfield Woods Road, and a policeman directs traffic before and after school. The Rostro tract is wooded and swampy. A brook which flows through it subjects it to occasional flooding.

The commission gave the following reasons for granting the change of zone: (1) There is a need for a shopping center in this area; (2) the potential growth indicates there will be further need in the future for a shopping center in this area; (3) it is unlikely that the property could ever be developed for residential purposes and it is more suitable for business purposes; (4) the area is adequately served by existing traffic arteries, and there is sufficient provision made in road right of ways for road improvement as required in the future; and (5) the shopping center site is strategically located on two main roads and is one of the few areas in the neighborhood of adequate size for a shopping center.

Among the claims of law made by the plaintiffs

in the trial court were that the change of zone constituted spot zoning, that it was in violation of the comprehensive plan and that it would create a traffic hazard at or near the intersection. Although the court did not categorically determine any of these claims, it concluded, in effect, that the change did not constitute spot zoning or violate the comprehensive plan, and it dismissed the appeal. It did not find the relevant facts upon the basis of which it had to determine whether the action of the commission was reasonable and proper. *Strain* v. *Mims,* 123 Conn. 275, 285, 193 A. 754. We review the decision of the trial court upon the basis of the proceedings before the commission; *Kuehne* v. *Town Council,* 136 Conn. 452, 458, 72 A.2d 474; and we shall have to consider the evidence before the commission in the light in which it was there presented. Rostro, Inc., sought the change of zone so that the Grand Union Company, under a lease of the land, would develop it for a shopping center, which may be needed in this general area, and erect a building containing over 48,000 square feet of floor space, 30,000 of which would be devoted to its own supermarket business. It is contemplated that the rest of the space in the building would be occupied by a branch bank, an appliance store, a clothing store, a barber shop, a shoe store, a variety store and a bakery. There would be two motor vehicle entrances and exits on Stratfield Road which would accommodate the bulk of the traffic, and one entrance and exit on Fairfield Woods Road. Off-street parking would be provided for over 300 automobiles.

Most of the oral testimony before the commission consisted of glowing statements by the proponents' attorneys on the advantages to the community of the project, while the attorneys for the opponents

painted a gloomy picture of the effect upon the neighborhood if the gargantuan plans received approbation. Each side produced experts, or reports by experts, in the fields of traffic control and town planning. Their opinions favored the view of their employers. In the report of the proponents' traffic expert, however, there appears a significant fact which should have been given deep and thoughtful consideration. The minutes of the executive session of the commission at which the change of zone was voted do not reveal any discussion of the point. The report shows that the heaviest traffic through the intersection occurs between 4:15 p.m. and 5:45 p.m., with the peak load between 4:30 and 5:30 o'clock. Northbound traffic on Stratfield Road at that time is twice as heavy as southbound and represents 79 per cent of the capacity of the road in that direction. A shopping center like the one proposed would attract at least 1300 vehicles per day. If we visualize the northbound cars which will be making left turns into the shopping center plus a fair proportion of the additional traffic which will be attracted to the center, it becomes readily apparent that, at least during the hours of peak traffic, congestion will develop and the traffic will exceed the capacity of the road.

The state highway department gives route 59 in this area a rating of "45," which means that in comparison with other highways only 12 per cent of the state highway system is more inadequate for existing traffic. While there was evidence before the commission that the present roads are adequate for existing traffic, we have diligently searched the record for any evidence before the commission which would substantiate the portion of its fourth reason for changing the zone which states that sufficient provi-

sion is made in road right of ways for the road improvement required in the future. No representative of the state highway department testified that route 59 was to be widened or otherwise improved. The only evidence on road improvement referred to the widening of Fairfield Woods Road which was in process at the time of the hearing. The local traffic authority was not called upon to evaluate the traffic situation which would result from the establishment of a shopping center, and the town engineering and highway departments did not submit any evidence on contemplated road improvements. Without factual basis, the fourth reason for the approval of the change of zone falls, and with it the approval itself. One of the purposes of zoning is to lessen congestion in the streets. Rev. 1958, § 8-2. On the facts of this case, the change of zone runs counter to that purpose. The action of the commission is therefore illegal and must be reversed. *Gordon* v. *Zoning Board,* 145 Conn. 597, 604, 145 A.2d 746.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.