GEORGE R. STILES ET AL. *v.* TOWN COUNCIL OF THE TOWN OF WEST HARTFORD ET AL.

DAVID CHOZICK ET AL. *v.* TOWN COUNCIL OF THE TOWN OF WEST HARTFORD ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 3, 1969—decided March 3, 1970

*Frederick U. Conard, Jr.,* with whom were *Theodore M. Space* and, on the brief, *Daniel P. Brown, Jr.,* for the appellant (defendant Vetrano) in each case.

*Valentine J. Sacco,* for the appellees (plaintiffs in the second case), and *David M. Barry,* for the appellees (plaintiffs in the first case).

RYAN, J. The parties to both of these appeals have stipulated that a single record of the proceedings appealed from, including the exhibits properly a part of the record, may be incorporated by reference in each case in the return of the town council and that both appeals may be heard together by this court.

On January 3, 1966, the defendant Joseph P. Vetrano, doing business as West Farms Mall Associates, submitted to the town council of West Hartford a petition requesting a change of zone for a thirty-acre tract of land, which was owned by him and was located on the southerly side of Old South Road and the westerly side of New Britain Avenue, from a business 1 district zone and a residence A district zone, to a "2-Acre Section 17.1.24 Special Development District" zone. Attached to the petition was a proposed ordinance and a development plan which would effectuate the change. The petition contained four copies of a map showing the proposed change in the boundaries of the zoning map as required under § 12.1.0 of the West Hartford ordinances (1961). The plans and specifications filed with the petition contained a table of land usage showing that the proposed mall shopping center will occupy thirty acres in the town of West Hartford, eighty-one acres in the town of Farmington and .065 acres in the town of Newington, a total of slightly more than 111 acres. An identical development plan was submitted to the town plan and zoning commission of Farmington at about the same time. The owner's petition was introduced at a regular meeting of the West Hartford town council on January 11, 1966, and at that time the council assigned it for public hearing on February 15, 1966. The council then referred the petition to the capitol

region planning agency in pursuance of § 8-3b of the General Statutes (Rev. to 1966) and to the town plan and zoning commission as required by the West Hartford town charter and the zoning regulations.

On February 15, 1966, a public hearing was held by the town council. A report of the land use committee of the capitol region planning agency was read to the council. The report found that a shopping center of the size proposed was not consistent with the regional plan, would be detrimental to other existing and planned commercial development in the capitol region and neighboring areas, and would have an adverse effect on the general economy. It recommended that the zoning changes be limited to a size consistent with a subregional center as shown on the regional plan. Extensive testimony of experts and others was heard in behalf of the owner, and the opponents presented witnesses including experts in opposition to the petition. The hearing ended in the early morning hours of February 16, 1966.

On February 28, 1966, the town plan and zoning commission filed a report recommending approval of the owner's petition, subject to a number of conditions. These conditions were accepted by the owner by letter of May 23, 1966.

In the town of Farmington the owner's petition to the town plan and zoning commission was not approved. On March 17, 1966, the owner, Vetrano, hereinafter referred to as the defendant, submitted a revised petition reducing the size of the area in Farmington from eighty-one to fifty-six acres. The effect of this revision reduced the mall area from 111 acres to eighty-six acres. There was no change in the area of the portion of the mall located in

the town of West Hartford. On May 23, 1966, the town plan and zoning commission of Farmington approved the defendant's application for a change of zone to permit the construction of the mall in the town of Farmington.

On May 26, 1966, the West Hartford town council held a special meeting to consider the defendant's application for the change of zone of his thirty acres in West Hartford. After considerable discussion the defendant's petition was adopted subject to twenty conditions which were imposed by the council and accepted by the defendant.

From the action of the West Hartford town council in adopting an ordinance changing the zone as to thirty acres of the defendant's land to a special development district zone under § 17.1.24 of the zoning regulations, the plaintiffs in both cases appealed to the Court of Common Pleas.

In the Court of Common Pleas extensive testimony was presented solely on the disputed issue of the aggrievement of the plaintiffs. The trial court found that six of the plaintiffs in the first case and one plaintiff in the second case were aggrieved by the action of the town council. The court concluded that the action of the town council was arbitrary, illegal, and in abuse of its discretion for the following reasons: (1) No adequate storm drainage plan was advanced. (2) Since a revised plan had been filed and approved in the town of Farmington, of which the West Hartford town council was informed, the defendant was required by good faith and the zoning law to resubmit his application and change of plan in West Hartford, and the council should have required a resubmission. (3) The proposed zone change should have been filed under § 17.1.24A, relating to a five-acre special develop-

ment district, of the zoning regulations instead of pursuant to § 17.1.24, relating to a two-acre special development district. (4) The zone change was not in accordance with the comprehensive plan. (5) The council failed to make a specific finding that in its judgment subdivided land within 250 feet of the proposed subdivision was fully safeguarded and that the development plan was consistent with the public welfare. (6) The zoning change will cause traffic congestion which will be contrary to public safety and welfare. (7) A change in circumstances of the neighborhood is required to justify the zone change to a retail use, and no such change was shown. (8) The proposed West Farms Mall would be economically detrimental to other commercial developments not only in West Hartford but in the entire capitol region. The appeal was sustained, and the defendant has appealed to this court. The West Hartford town council has not appealed from the judgment of the Court of Common Pleas.

The defendant assigns error in the conclusions of the trial court and in the overruling of his claims of law. He does not, in this appeal, contest the standing of the plaintiffs as aggrieved persons. It should be noted at the outset that the evidence presented in the Court of Common Pleas was unusually extensive. Under § 8-8 of the General Statutes (Rev. to 1966), no evidence was admissible except on the issue of aggrievement unless it was essential for the equitable disposition of the appeal. *Troiano* v. *Zoning Commission,* 155 Conn. 265, 268, 231 A.2d 566; *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 245, 230 A.2d 595; *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 241, 196 A.2d 427; *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 70, 157 A.2d 103. There is no indication in the

record that any evidence was admitted except for the purpose of determining the question of aggrievement of the plaintiffs. "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 267, 196 A.2d 758; *Abramson* v. *Zoning Board of Appeals,* 143 Conn. 211, 214, 120 A.2d 827; *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 71, 157 A.2d 103." *Willard* v. *Zoning Board of Appeals,* 152 Conn. 247, 248, 206 A.2d 110. "In an appeal from a zoning board of appeals or a zoning commission, any portion of the record before the board or commission which was returned to the trial court but was not included in the printed record shall, if a party desires to present it to us, be printed only in an appendix to the brief. Practice Book §§ 647, 716, 721, see § 719; *Miklus* v. *Zoning Board of Appeals,* . . . [154 Conn. 399, 400, 225 A.2d 637]; *Faubel* v. *Zoning Commission,* 154 Conn. 202, 208, 224 A.2d 538." *Ruggles* v. *Town Plan & Zoning Commission,* 154 Conn. 711, 712, 226 A.2d 108.

A number of the claims alleged by the plaintiffs and sustained by the trial court concerned the desirability of the change of zone. "The courts do not and should not substitute their judgment for that of the local authority." *Hall* v. *Planning & Zoning Board,* 153 Conn. 574, 577, 219 A.2d 445. So long as it appears that an honest judgment has been reasonably and fairly exercised by the zoning authority after a full hearing, courts should be cautious about disturbing its decision. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. Courts cannot substitute their judgment for the wide and liberal discretion vested in the local

zoning authority when it is acting within its prescribed legislative powers. *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160; *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 75, 167 A.2d 454; *Tarasovic* v. *Zoning Commission,* supra, 71. The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. See *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597. It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the courts can grant relief on appeal. *Lupinacci* v. *Planning & Zoning Commission,* 153 Conn. 694, 699, 220 A.2d 274; *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886; *Gordon* v. *Zoning Board,* 145 Conn. 597, 604, 145 A.2d 746.

The defendant assigns error in the conclusions of the trial court that the vote of the council was contrary to the health, public safety and general welfare of the community because of traffic congestion, flooding of properties along Rockledge Brook owing to the fact that no adequate storm drainage plan was advanced, and because the proposed shopping center will be detrimental to the economy of West Hartford and the capitol region.

In a consideration of the issue of traffic, it must be borne in mind that it is not the overall volume of daily traffic but "congestion in the streets," that is, density of traffic, which is referred to in the charter of the town wherein authority is conferred on the town council as the zoning authority of the town to adopt zoning regulations. 28 Spec. Laws, No. 562,

p. 760 § 3; *Pecora* v. *Zoning Commission,* 145 Conn. 435, 440, 144 A.2d 48. Evidence was presented at the public hearing on February 15, 1966, by a qualified highway traffic engineer as to the present highway traffic volume, the present and proposed highways, and the future traffic volume projections after the proposed shopping center begins functioning. He suggested improvements in the roads immediately surrounding the proposed shopping center and concluded that "[w]e believe with the implementation of these improvements, safe and convenient access to patrons of the center would result without interference to highway traffic, congestion would be minimal . . . ." A detailed report by a consulting engineering firm with which the witness was associated was filed, which recited the following conclusions: "The studies of access and traffic in the environs of the proposed shopping center clearly indicate the need and importance of attractive access. Certain highway modifications are essential for the development to operate successfully. Implementation of the roadway improvements and access plans will assure safe and convenient access for the patrons of this center without interference to other highway traffic."

A letter from the chief engineer of the state highway department was introduced which indicated that the state highway department had reviewed the plans for the West Farms Mall as the mall affected adjacent state highways. The state highway department agreed that the widening of existing route 71 to a divided highway between Corbin's Corner and the crossing of interstate route 291 was necessary, as well as the widening of the state-maintained portion of South Road. "In accordance with Department policy, since such widening is necessary be-

cause of adjacent development, we would expect the developer to pay the cost for such widening. In accordance with State Statute 13a-98 the State Highway Commissioner is empowered to construct such widening, providing the cost thereof is reimbursed by the developer."

The plaintiffs rely on *Faubel* v. *Zoning Commission,* 154 Conn. 202, 210, 224 A.2d 538, and *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746, and urge in their brief that, since the town council has no control over the interstate highways to be built or over the improvement of local roads, it was an abuse of discretion to rely on factors outside its control. The cases relied on are clearly distinguishable from the instant case. In the *Faubel* case, the necessary road improvement was primarily dependent on favorable action by the town plan commission, and, because the plan commission had expressed opposition to the rezoning, the court concluded: "[I]ts approval of measures to implement that rezoning cannot be assumed to be a probability. We have had occasion to consider similar situations in which the zoning authority had no control over street or highway improvements affecting zoning requirements. See *Brustein* v. *Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523; *Luery* v. *Zoning Board,* 150 Conn. 136, 145, 187 A.2d 247; *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 326, 150 A.2d 312; *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746. As indicated by these cases, a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless, at least as in the *Luery* case, the necessary action appears to be a probability. In the absence of some

reasonable assurance, which this record does not furnish, that provision can be made for the necessary transportation facilities and utilities, the commission has succeeded only in setting apart a portion of the town of Ridgefield for a use which could not be made of it." *Faubel* v. *Zoning Commission,* supra. Similarly, in the *Gordon* case, there was no evidence that the authority controlling street development was willing to put in the necessary roads.

In the instant case there was evidence before the council that the shopping center would be completed by 1970 and that it would take about two years or more before peak traffic would be reached. There was testimony that interstate route 291 was going into construction in 1968, and it was expected that it would be opening about 1970. Interstate route 84 was already under construction, and the construction of interstate route 291 was regarded by the state highway department as definite. This was also indicated by the land use committee of the capitol region planning agency in its report to the town council. On the basis of the evidence presented, the defendant council could reasonably conclude that the necessary action appeared to be a probability. *Luery* v. *Zoning Board,* supra. The trial court's conclusion that traffic congestion must result cannot be sustained.

The defendant also assigns error in the conclusion of the trial court that no adequate drainage plan was advanced and that this will cause flooding and other adverse effects on residential property owners. The defendant's petition was approved by the town council subject to twenty conditions, four of which relate to the drainage plan as follows: "2. The permanency of the proposed flood reten-

tion reservoir shall be guaranteed to the Town of West Hartford. . . . 7. To avoid the depletion of the ground water table, the drainage system, including the retention reservoir, shall be designed to allow for a maximum return of storm water into the ground. . . . An oil separator device shall be installed in the storm drainage system according to specifications by the Department of Health. . . . 20. That the drainage plan be subject to the approval of the Town Engineer so as not to unduly overload the existing drainage channels."

The report by the capitol region planning agency expressed concern about potential flooding to Rockledge Brook, but it concluded: "It is believed that this problem can be avoided if the drainage system for the center is properly designed after careful hydrologic and hydraulic analysis. Such analysis and design by the town engineers of Farmington and West Hartford is urged."

A consulting professional civil engineer, licensed in Connecticut and in thirteen other states, specifically discussed the drainage plan calling for the continued use of a sixty-inch culvert for part of the area, combined with a separate network of pipes leading to a storage pond. He concluded: "Thus, in essence, in a bad storm or downpour, the whole parking area is used as a flood plain. This, incidentally, is a system used very successfully on several other projects before and is completely workable and provides proper flood protection for the area. The principle of a storage pond is not new. The Connecticut State Highway Department is considering the same type of system north of Interstate 84 to hold drainage back so it will not exceed the capacity of the pipe entering at the northeast corner. Our storage pond in the rear, in

addition has the further advantage of allowing the surface water to percolate back into the ground and, as a matter of fact, in the Capitol Region Planning Agency's bulletin read at the beginning of this meeting, very definitely a requirement of this site will be proper hydrologic and hydraulic engineering studies. We have already discussed them briefly and submitted a preliminary design to the Town Engineer, and we are fully aware that we must satisfy him and the Water Resources Committee and other officials, but I do believe we have presented enough data at this time to show the system is feasible and can be constructed and that the project can be constructed without damages to the citizens of West Hartford or property lying at the rear end of the culvert into which we connect."

Section 17.1.24 of the zoning ordinances, pursuant to which the council acted, provides that "[n]o certificate for the occupancy of any building or use of the premises shall be issued until all the detailed protective safeguards have been completed in accordance with said plan." "The town authorities thus retain control of the situation and are enabled to protect the public interest by insisting on reasonable and proper compliance with the . . . development plan." *Clark* v. *Town Council*, 145 Conn. 476, 489, 144 A.2d 327. There was ample evidence before the council to support its decision. The plaintiffs urge that the trial court was correct in concluding that the plan was inadequate as to drainage, since the trial court found that, although the development plan shows a ponding area of seven acres, in fact only three plus acres are under option to the defendant and that, since the defendant has under option an area of approximately half that size, it is not shown whether seven acres are available. These

claimed facts do not appear in the printed record or in the appendix to the brief of any party. It seems obvious that if there was evidence to this effect it was brought forth at the hearing on aggrievement. Since the evidence offered in the trial court was limited to the single question of aggrievement, it cannot be used to support the court's finding. From the record before the town council, it is clear that there was no abuse of discretion on the part of the town council in relying on the conditions previously set forth in order to provide for a proper drainage plan. Furthermore, its continuing control over the situation is an additional guarantee.

The defendant assigns error in the trial court's conclusion that the shopping center would be economically detrimental to the welfare of the town of West Hartford and to the region surrounding it. The council had before it extensive testimony by experts that the shopping center would be of considerable economic advantage. One expert testified that the site is "the best suburban location available probably in all of Connecticut and very certainly in the Central Connecticut area." He further stated that it would result in employment and tax payments to towns which should prove to be an economic asset, as well as immensely improving the quality of shopping services available. The trial court relied on the report of the capitol region planning agency which indicated that such a regional center would be detrimental to other existing and planned commercial development and to the neighboring area and would have an adverse effect on the general economy. It recommended that the zoning changes be limited to a size consistent with a subregional center. This report was read to the council at the public hearing held on February 15,

1966. Reports of regional planning agencies are "purely advisory." General Statutes (Rev. to 1966) § 8-3. The defendant's expert disagreed with the conclusion of the capitol regional planning agency and offered evidence that the agency greatly underestimated the total trading area of the proposed shopping center and that, since West Hartford had the greatest potential of any proposed subregional center, it could exceed the suggested square footage of the defendant's original plan and still be a subregional center within the concept of the capitol region plan. In view of this evidence we are obliged to conclude that the trial court substituted its own judgment for that of the town council.

The defendant assigns error in the conclusion of the trial court that the change of zone was not in accord with the comprehensive plan and that the action of the town council in approving the retail use, in the absence of new conditions or a substantial change in the district, constituted a departure from the comprehensive plan and that the departure was arbitrary and illegal. The plaintiffs urge that the "Plan of Development" originally made by the town plan and zoning commission of West Hartford is the comprehensive plan of that town. "Ordinarily, as is the case in municipalities which operate under the general law, the designation by the master plan of land uses in various areas is merely advisory. See such cases as *Dooley* v. *Town Plan & Zoning Commission,* 154 Conn. 470, 473, 226 A.2d 509; *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822." *Rosenberg* v. *Planning Board,* 155 Conn. 636, 638, 236 A.2d 895.

This court has recently held that "[t]he recommendations contained in a development plan for West Hartford are advisory only; West Hartford

Charter, c. 13 § 5 (1959); 28 Spec. Laws 766 § 5; *DeMeo* v. *Zoning Board,* 148 Conn. 68, 76, 167 A.2d 454; and the town plan and zoning commission of West Hartford only has advisory powers. 19 Spec. Laws 935 § 6; West Hartford Charter, c. 13 § 4 (1959); 28 Spec. Laws 766 § 4; *Sullivan* v. *Town Council,* 143 Conn. 280, 288, 121 A.2d 630." *Cascio* v. *Town Council,* 158 Conn. 111, 114, 256 A.2d 685.

What constitutes the "comprehensive plan" of West Hartford was discussed in *Clark* v. *Town Council,* 145 Conn. 476, 487, 144 A.2d 327, which concerned an appeal from the granting of a zoning change to "Corbin's Corner" similar to the zone change granted here. We said in that case (p. 486): "It is claimed that the action of the council in approving the corporation's subdivision development plan does not accord with the comprehensive plan of the town. 'A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential uses of the properties.' *Miller* v. *Town Planning Commission,* 142 Conn. 265, 269, 113 A.2d 504; *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 709, 88 A.2d 538. It may be found in the scheme of the zoning regulations themselves. *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173; *Miller* v. *Town Planning Commission,* supra, 269."

In the instant case, part of the land was originally zoned for business. It is located immediately to the west of another major commercial development (Corbin's Corner). The zoning regulations provide for special development districts and the tract is designated as a "Special Development District" on the advisory town development plan. The conclu-

sion of the trial court that the change of zone was not in accord with the comprehensive plan was erroneous.

The plaintiffs urge that, in the absence of new conditions or a substantial change in the district, the action of the council was a departure from the comprehensive plan and was arbitrary and illegal. The alteration of zone boundaries by a zoning authority is a legislative function. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission*, 152 Conn. 7, 10, 202 A.2d 241. In performing this legislative function, the zoning authority has broad legislative discretion, and the rule which states that such an authority should not ordinarily change the zoning classification of an area in the absence of changed conditions will only be applied if it appears that the zoning authority is acting arbitrarily. *Hawkes* v. *Town Plan & Zoning Commission*, 156 Conn. 207, 209, 240 A.2d 914; *Malafronte* v. *Planning & Zoning Commission*, 155 Conn. 205, 209, 230 A.2d 606. In view of the facts previously recited, the action of the council was certainly not arbitrary.

The defendant assigns error in the conclusions of the trial court that, after submitting an amended plan which was approved by the Farmington zoning authority, the defendant should have resubmitted another plan to the West Hartford town council and that the council should not have permitted the defendant to seek approval of a development plan which it knew had been altered substantially in Farmington. A map showing the defendant's amended plan, which was approved by the Farmington zoning authority on May 23, 1966, was sent by counsel for the plaintiffs to the West Hartford town council and was received by it on the morning of May 26, 1966. It indicated a number of changes

in the town of Farmington. The area of the land in the Farmington portion of the shopping center was reduced by twenty-five acres from eighty-one acres to fifty-six acres. The area of some of the buildings was reduced. Certain buildings on the Farmington side were relocated, and a super-market and a gasoline service station in Farmington were eliminated. In a letter which accompanied the map sent to the council, the plaintiffs' attorneys claimed that four buildings located in West Hartford were moved. Three of the buildings referred to were only partially on the West Hartford side of the line, and only a very small portion of two of these buildings was on the West Hartford side of the line. About two-thirds of the area of another building was in West Hartford and one-third in Farmington, and one building was entirely in West Hartford. It would appear that if any changes were made, such changes were minimal. The Farmington zoning authority was not empowered to change any portion of the plan in the town of West Hartford, nor did it profess to do so. Its authority on zoning was limited to the town of Farmington. It is equally true that the West Hartford town council can regulate the use of property only within the limits of that town. Obviously the zoning authority of each town must limit itself to the plan of development in its own town. Neither has any authority to approve any plan of development in the other town, and there is nothing to indicate that any such attempt was made. *Crescent Development Corporation* v. *Planning Commission*, 148 Conn. 145, 148, 149, 168 A.2d 547. The defendant's application went before the town council in its original form with no changes.

The adoption in Farmington of an amended de-

velopment plan did not amend, alter or render incomplete the development plan approved by the West Hartford town council. The town council was aware of the new application in Farmington through the defendant's letter received May 23, 1966. The minutes of the special meeting of May 26, 1966, indicate that council members discussed the changes. The council approved the defendant's plan with knowledge of the changes in the Farmington plan. It imposed conditions which adequately protected the town. If the defendant fails to conform to the plan and the conditions imposed by the council, he will be unable to obtain a building permit or a certificate for the occupancy of any building or for the use of the premises. The conclusions of the trial court regarding resubmission of a revised plan cannot be sustained.

The defendant also assigns error in the conclusion of the trial court that the proposed zone change should have been filed under § 17.1.24A of the zoning regulations, referred to as a five-acre special development district, instead of under § 17.1.24 of the zoning regulations, referred to as the two-acre special development district. Section 17.1.24 provides as follows: "The owner or owners of any tract of land not less than 2 acres in area may submit to the Town Council a complete development plan for such area showing proposed streets, building lines, parks, parking areas and/or other public or private permanent open spaces, together with a proposed building plan indicating lots for single family or two family houses or areas where group houses or apartment houses or buildings for uses permitted in a Business '1' District or any combination of them, are proposed to be built . . . ." Section 17.1.24A was adopted in July, 1965. It

provides that: "The Town Council may authorize the following uses of land, buildings or premises in any zone, subject to appropriate conditions and safeguards, upon application by the owner or owners of any tract of land, not less than five acres in area, when in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighborhood property will not be substantially or permanently injured. A. USE REGULATIONS. In any zone buildings, land or premises in single ownership may be used for any purpose except those uses specified in Sec. 17.1.20 of these regulations." Section 17.1.20 of the regulations specifies certain uses and prohibits such uses anywhere in the town of West Hartford. Section 17.1.24 permits only residential or business 1 uses, "except that theatres, movie houses, mortuaries and buildings which have public assembly as their principal purpose shall be prohibited." The excepted uses enumerated are permitted in a business district. § 17.1.16. Thus, the uses permitted under § 17.1.24 are limited to residential use and to a portion of the uses permitted in a business 1 district.

The effect of the council's action in adopting in the instant case the ordinance proposed by the defendant under § 17.1.24 was to create an entirely new limited business zone subject to regulations peculiar to that type of zone. *Clark* v. *Town Council,* 145 Conn. 476, 484, 144 A.2d 327. Thus, the permitted uses are quite limited. On the other hand, upon the approval of a development plan under § 17.1.24A, any area in the town regardless of its zoning classification may be subjected to any use which is not prohibited everywhere in the town. The plaintiffs urge that the adoption of § 17.1.24A

is an implied repeal or amendment of § 17.1.24. Repeal by implication is not favored. The authority to adopt zoning regulations was granted to the council by a special act of the legislature. Under 28 Spec. Laws, No. 562, p. 725 § 10, it is provided as follows: "Form of ordinance and effective date. . . . All ordinances which amend or repeal existing ordinances shall set forth in full the section or subsection to be amended or repealed and, if it is to be amended, shall indicate matter to be omitted from the revised section or subsection by enclosing the same in brackets and new matter by underscoring. . . ." The regulation which was adopted in July, 1965, and became § 17.1.24A of the zoning regulations did not purport by its terms to amend or repeal any existing regulation although § 17.1.24 and its predecessors had been part of the zoning regulations of the town of West Hartford for many years. See *Clark* v. *Town Council,* supra, 481. This is not to suggest that, because the requirements of the special act were not observed by the town council, § 17.1.24A is invalid. To the contrary when it is considered with the obvious differences in the two sections, there is a compelling presumption that it was not the intention of the town council to amend or repeal § 17.1.24.

Section 17.1.24 of the regulations provides in pertinent part as follows: "Such subdivision development plan shall not be recommended by the Commission unless in its judgment the appropriate use of unsubdivided land within 1200 feet of such subdivision and subdivided land within 250 feet of such subdivision is fully safe-guarded and such development plan is consistent with the public welfare." The defendant assigns error in the conclusion of the trial court that this language required a finding

by the town plan and zoning commission to that effect and that such a finding was not merely directory but was mandatory and a necessary procedural step to confer jurisdictional authority on the town council. The commission in its report to the council recommended that a number of conditions be imposed on the defendant by the council. The majority of the commission favored the petition for the following reasons: "1. The highest and best use for the subject tract is according to the Town Development Plan classification of 'Special Use District' which includes as appropriate use a shopping center. 2. The proposed shopping center, due to the variety of facilities it will offer, is a desirable and necessary addition to the retail district of the Hartford region. 3. Due to its location between two highway interchanges, the center will have excellent access from all directions. 4. The taxable assets of West Farms Mall will help to broaden the tax base of the Town of West Hartford." The town council is the zoning authority of West Hartford. Under the charter, the zoning ordinance procedure requires that any proposed amendment to the zoning regulations be referred by the council for investigation and recommendation to the town plan and zoning commission. No action shall be taken by the council until the recommendation of the commission is received, except that failure of the commission to report within thirty days of the reference of the proposal to it by the council shall permit the council to take final action without the commission's report and recommendation. A majority vote of the council may amend the zoning regulation except that, if action is other than as recommended by the commission, a two-thirds majority vote shall be required. 28 Spec. Laws, No. 562,

p. 760 § 5. The commission's report is merely a recommendation and one which the council may overrule by an appropriate vote. Furthermore, there is nothing in the language of § 17.1.24 which makes a specific finding mandatory. The language in question is directory only and calls for the exercise of judgment by the commission with reference to the area involved. The favorable report of the commission and the details of its recommendation clearly indicate that the necessary precautions were included to safeguard the area and that the commission considered the development plan to be consistent with the public welfare.

There is error in both cases, the judgments are set aside and the cases are remanded with direction to dismiss the appeals.

In this opinion the other judges concurred.