[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal has been taken pursuant to 8-30g, the Affordable Housing Land Use Appeals Statute. The plaintiff applied to the defendant to amend its zoning regulations by adding a new section 36, entitled "Affordable Housing District". The stated purpose of the proposal was "to provide for the development of affordable housing as defined by Connecticut General Statutes 8-30a and 8-30g". The second part of the application sought to change the zoning classification of 12.4 acres of land from B-2 (Central Business) and RG-A (Residence Garden Apartment) to the new Affordable Housing District.
The site presently contains 54 multi-family dwelling units located in three buildings of eight units each and five buildings of six units each. It is bounded on the north by the R-40 (single family on 40,000 square foot lots), on the east by the RG-A zone, on the south by I-3 (industrial park) and on the west by the B-2 and the R-40. The actual uses of the adjacent properties include a strip shopping center abutting on the west and a condominium development on the east. The property is located on State highway Route 80 (Foxon Road). The plaintiff seeks to add 40 units to the site for a total of 94 units to be situated in five buildings of 8 units each. Twenty percent or 19 of the units will be affordable. The site is served by public water and sewer. The court viewed the premises in the presence of counsel and the parties' representatives. Because the minimum lot area per unit in the RG-A zone is 10,000 square feet a variance was obtained to permit the 54 CT Page 9306 units on only 442,000 square feet of RG-A land. Thus, the current density is 5.32 units (54 units divided by 10.146 acres) per acre whereas the plaintiff's proposal contemplates 7.58 units per acre (94 units divided by 12.4 acres). The defendant denied the application for the reasons that follow.
I. AGGRIEVEMENT
Essential to the life of every zoning appeal is the ingredient of aggrievement. The plaintiff clearly qualifies as an aggrieved person by virtue of its status as the owner in fee simple of the property in question both at the time the application was filed and at all times thereafter to the date of trial. A general partner of the plaintiff, Anthony A. Papa, testified to this fact and offered in evidence a certified copy of the deed by which it took title on July 18, 1990. Consequently, the court finds that the plaintiff has sustained its interest in the property continuously and is therefore aggrieved. Goldfeld v. Planning and Zoning Commission,3 Conn. App. 72 (1985).
II. THE NATURE OF THE APPLICATION
As one would expect, the defendant attempts as a threshold matter to extricate itself from the formidable burden that 8-30g
places upon it. It argues that 8-30 does not apply here because the plaintiff's application "does not meet the requirements for an affordable housing development within the meaning of . . . 8-30 et seq. Resolution of this issue requires a careful examination of the application. The application incorporates by reference a set of proposed regulations entitled "Section 36 Affordable Housing District". It begins by describing the purpose of the legislation as follows:
 36.1 Purpose of District: The purpose of the affordable housing district is to provide for the development of affordable housing, as defined by Connecticut General Statutes 8-39a and 8-30g.
Section 36.9 virtually tracks the applicable language of 30g(a)(1)(B). and 8-39a.[1] Thus, the plaintiff contemplates erecting rental rather than sale housing. The defendant asserts that the application is defective as an affordable housing application because it fails to include an exact specimen of the restricted covenant in the form of a deed or other instrument of conveyance. In support of this claim the defendant relies on Misky CT Page 9307 v. Planning and Zoning Commission, 7 Conn. L. Rptr. 16, 462 (November 9, 1992). Such reliance is misplaced. In that case, the court pointed out that neither the application nor the record indicated any specific reference to the twenty year statutory limitation. Quite the contrary is present in this case. As this court stated in Kauffman v. Danbury Zoning Commission,9 Conn. L. Rptr. 19, 594 at 597 (1993) ". . . in order for an application to qualify as one made in connection within an affordable housing development under 8-30g(a) it must on its face or through adequate representations in the record indicate that the development proposed will satisfy the requirements of 8-30g (a)". The court in Misky found no such indication in the record and therefore deemed the application not to be one for an affordable housing development. The record in this case indicates unequivocally that the rental units will be subject to the requisite statutory restrictions for the requisite statutory period. In fact, the commission itself deemed the application to be one for an affordable housing development in its legal notice of the public hearing. As the court stated in Shapiro Farm Limited Partnership v. North Branford Planning and Zoning Commission, CV92 0517281 S (J.D. Hartford/New Britain, October 15, 1993, Berger, J.) . . . "notwithstanding the absence of a prepared deed or model covenant, the applicant's many references to the statutes together with the . . . regulations, satisfy the three fold test of General Statutes8-30g(1) concerning percentage of units, price of units and time restrictions".
But the defendant argues further that if the development is converted to condominiums and they are offered for sale, the restrictive covenant places no limitation on the sales price of the units, and if a purchaser wishes to live in a unit rather than rent it out, there will be nothing in the restrictive covenant to prohibit him from doing so. The simple answer to this charge is that such a use will directly violate the expressed terms of the restrictive covenant. If this occurs, the town has numerous remedies to draw upon to assure compliance. See, generally, the discussion in Kauffman v. Danbury, supra at 597-599. The defendant has cited no authority for the proposition that the simple act of conversion of an apartment unit from rental to condominium ownership ipso facto will extinguish the twenty year restriction or the rental price limitation. It is the obvious intent of the legislation that such a covenant run with the land for its entire duration. There is nothing in either the condominium act, 47-68a
et seq. or in any of our case law that suggests that a restrictive covenant is extinguished by a conveyance. CT Page 9308
At oral argument, the defendant hypothesized that the developer, pursuant to a condominium conversion, might sell one or more of the affordable units at market rate prices, thus defeating the purpose of the statute. The simple answer to this is that even if this were to occur the restrictive covenant would still compel the purchaser to rent the unit at a price consistent with and 8-30a. The plaintiff's application is clearly embraced by the meaning and scope of 8-30g(a)(1)(B)(2). Therefore, this appeal is governed by the provisions of that statute.
III. THE REVIEW
Under 8-30g(c) the legislature has shifted the burden of proof in an affordable housing appeal from the plaintiff developer to the defendant zoning authority. The statute requires that both the commission's decision and the reasons it cites for its decision be "supported by sufficient evidence in the record". Kauffman v. Danbury Zoning Commission, supra at 599. When a zoning commission has given collective reasons for its decision the court is bound to accept them as the basis for the commission's decision. DeMaria v. Planning and Zoning Commission, 159 Conn. 534, 541 (1970). Thus, any undisclosed reason such as the adequacy of the municipal sewer system as the defendant advances in its brief may not be considered. The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Zygmont v. Planning and Zoning Commission, 152 Conn. 550, 553
(1965). The key to the application of this test is whether any one reason is pertinent to the considerations which the zoning authority was required to apply. Unlike in conventional zoning appeals, the considerations which the authority is required to apply are not limited to 8-2. By the enactment of 8-30g the legislature has created a new set of considerations which zoning authorities are required to apply in affordable housing cases.
The predominant theme that manifests itself in the reasons assigned by the defendant is the commission's desire to discharge in its own way its statutory responsibility to promote affordable housing. On December 5, 1991, just six months before the filing of this application, the commission adopted its own affordable housing regulations known as 42A.8 et seq. As the defendant remarks in its brief, "the commission found the proposed annexation (sic.) to be conflictual with the preexisting goal of the affordable housing strategy of the town of North Branford as represented in the current affordable housing regulations". CT Page 9309
These very regulations were involved in Shapiro Farm Limited Partnership v. Planning and Zoning Commission, supra. The commission argues that its denial of the application was necessary to protect the public interest in preserving and promoting the use of its own regulations, which of course it prefers. At the outset, it is noted that there is no evidence in either the record or in the commission's articulated reasons that the public interest advanced is (a) substantial or (b) that it outweighs the need for affordable housing.[2] Likewise, neither the defendant's brief nor its counsel's oral argument addressed this requirement. See, Pratts Corner Partnership v. Southington Planning and Zoning Commission, 9 Conn. L. Rptr. 10, 291 (1993).
While the validity of the North Branford Affordable Housing Regulations cannot directly be an issue in this case, Connecticut Health Facilities v. Zoning Board, 29 Conn. App. 1 (1992), their appropriateness as a suitable vehicle for the satisfaction of the town's statutory obligation to "promote housing choice and economic diversity in housing for low and moderate income households" is open to question in this proceeding. In the Shapiro Farm Limited Partnership, case, supra, Judge Berger condemned both the 50 unit annual cap on the number of permitted affordable units and the perpetuity requirement of the restrictive covenant. He termed them "unreasonable, discriminatory and unlawful." This court would add that an artificial cap of 200 units townwide during the life of the regulation is also unlawful for the same reason. The defendant's Affordable Housing Regulations deviate from 8-30g in three other materials respects. First, they require that at least 25% of the units be affordable. (42A8.19A). Second, Section C defines an affordable housing unit as one containing two or three bedrooms whereas there is no such limitation in the General Statutes. Third, the regulations are clearly oriented to moderate income persons (Section 42A8.19BC). Low income persons or households are not included.
Both from this case and the Shapiro case it is apparent that the town of North Branford has chosen to stand fast on its own "affordable housing strategy". North Branford's efforts in responding to the legislature's call for affordable housing can be viewed from two perspectives. Some (including the defendant) might say that the town should be commended for recognizing its responsibilities in a swift, thoughtful and comprehensive manner. The concept of scattered site affordable housing is in theory a proper and salutary goal. The avoidance of a project-like CT Page 9310 environment where large concentrations of economically deprived citizens tend to gravitate has become generally accepted as sound municipal planning. See, South Burlington County NAACP v. Mount Laurel Township, 456 A.2d 390, 415 (N.J., 1983). However, there is a serious contradiction that shows through these regulations. On the one hand, the town has exceeded the limits specified in 8-30g
as to the percentage of affordable units (25% v. 20%) and the duration of the restrictive covenant (perpetuity v. 20 years). On the other hand, the ordinance limits the number of affordable units buildable in any year to 50 and in a lifetime to 200. This is not a controlled growth principle but an impermissible, no growth posture. Annual and lifetime caps are an affront to the legislature's goal of providing universal, affordable housing for Connecticut citizens of low and moderate income. This is specially true when the state has certified as affordable only 114 or 2.5% of the town's residential units. To meet the exemption threshold of 10 percent the town needs a total of 455 units. So, when the 200 maximum number of units is added to the certified number of 114, the town will never achieve the number of units which the state considers as an essential minimum for every municipality in the State.
"Where the legislature has delegated to the local government the power to deal with a particular field of regulation, i.e., zoning, the fact that a statute regulates the same subject in a limited way does not by that very fact deprive the local government of the power to act in a more comprehensive but not inconsistent manner" P.X. Restaurant Inc. v. Windsor, 189 Conn. 153, 161
(1983). These regulations are not only inconsistent with the existing body of law dealing with affordable housing, they are repugnant to it. In contrast, the plaintiff's proposal is entirely compatible with the statute. Parenthetically, the court is deeply distressed that the South Central Council of Governments has endorsed North Branford's initiative on the grounds of preservation of local control. In conclusion, Section 48A.8 as drafted is a sham and therefore is deserving of no consideration in determining whether the defendant has met its burden of proof. Section 8-30g
drives municipal affordable housing strategies until the 10% baseline is achieved.
While most of the reasons advanced by the commission in support of its denial of the plaintiff's application relate to its predilection for Section 48A.8 it has articulated other reasons which merit the court's consideration. First, the commission noted that the existing 54 units on the site got there by virtue of CT Page 9311 a variance and that this number already exceeds the density permitted in the zone. It then reasons that the higher density envisioned under the plaintiff's proposal "would only exasperate (sic.) traffic and visual impacts to the neighborhood". To the extent that this raises an issue of excessive density it is clearly a proper goal for a zoning commission to consider under 8-2. Issues of density are usually fairly debatable. Lurie v. Planning and Zoning Commission, 168 Conn. 295, 309 (1971). At the same time, since 1984 (P.A. 84-263) zoning commissions have been required to adopt regulations to encourage the development of housing opportunities for all citizens of the municipality". In order to qualify as a legitimate basis for denial of an affordable housing application density must represent a substantial public interest in "health, safety or other matters which the commission may legally consider". Section 8-30g(c)(2). The record is totally devoid of any evidence to support a public interest precluding this development.
As for "traffic impact", there is nothing in the record to indicate that the plaintiff's development will cause "congestion in the streets" or a traffic hazard, 8-2; or even increase in the density of traffic. Stiles v. Town Council, 159 Conn. 212 (1970). In fact, the plaintiff introduced a traffic study done in July, 1992, which stated that relocating the vehicular access to the site to the east would improve traffic safety. Even the opposition admitted that the only effect would be an increase in overall traffic during the day. It is not the overall traffic that controls, but the density of the traffic. Stiles v. Town Council, supra at 219. Neither traffic safety nor traffic flow constituted a substantial public interest which warranted protection against the development.
"Visual impact to the neighborhood" must be placed in the context of the final reason given, namely, that "no architectural standards and site controls are provided in the proposed text which ensures new construction is compatible with historic or architecturally unique buildings in the center" Such a reason is disingenuous in the face of 41.2.2 of the regulations which requires as part of a site development plan which the plaintiff must submit that "the development of the lot shall be of a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike areas, to protect property values and to preserve and enhance the appearance and beauty of the community". If this provision does not give the commission adequate control over architecture, the commission could CT Page 9312 easily have articulated its objection on these grounds pursuant to8-30g(d) or 8-30g(c)(4), thereby achieving its objective of gaining some architectural and site control over the development.
The next reason cited by the commission is that "the proposed regulation can place a negative impact on schools and other public services" The only evidence in the record that supports this statement is a letter from the Superintendent of Schools which expressed his concern over affordable housing developments which exceed currently permitted size limits. It is noted that the Superintendent did not address the particular characteristics of this specific project and that he wrote a virtually identical letter in the Shapiro Farm Limited Partnership, 9 Conn. L. Rptr. 10
at 291, case. The letter does nothing more than to reflect the fact that the town's no growth policy has permeated the Board of Education. It has limited if any value. As in Shapiro, there is nothing in the record to indicate that this development will have a negative impact on the school system. As this court stated in Pratts Corner Partnership v. Southington Planning and Zoning Commission, supra at 294. "This is essentially a fiscal impact consideration. Judge Berger dealt with a similar claim in T.C.A. New Canaan, supra. The issue there as here was whether a zoning commission has the authority to deny an application for a change in zone which would result in financial distress to a school system because of an unplanned influx in students. Such authority depends upon whether fiscal impact is a pertinent consideration for a commission under 8-2. Capalbo v. Planning and Zoning Board of Appeals, 208 Conn. 480, 490 (1988). Neither 8-2 nor expressly or by fair implication authorizes a zoning commission to reject an application for affordable housing because of the fiscal impact which the development might have on the municipality's school system. See, Beach v. Planning and Zoning Commission,141 Conn. 78, 84 (1954)". Next, in its brief the defendant argues that the absence of approval from the Water Pollution Control Authority for the sewer connection was sufficient justification for the denial. While that may or may not be so, the commission did not include this in the reasons it gave so the court is not permitted to look behind the reasons actually expressed. DeMaria v. Planning and Zoning Commission, supra.
The final reason which must be analyzed is that the proposal is inconsistent with the plan of development. Generally, a municipal plan of development adopted under 8-23 of the General Statutes is advisory only except as to municipal improvements and subdivisions as to which it is controlling. Purtill v. Town CT Page 9313 Planning and Zoning Commission, 146 Conn. 570 (1959). One would expect a zoning commission to be guided by the plan. Mott's Realty Corp. v. Town Planning and Zoning Commission, 152 Conn. 535, 538
(1965). In fact, consistency of a zoning commission's action with a plan of development has usually been recognized as a valid and proper reason to support the agency's action. Calandro v. Zoning Commission, 176 Conn. 439, 441 (1979). Effective October 1, 1991, the legislature gave added importance to a municipal plan of development by mandating that a commission "state on the record its findings on the boundaries or changes thereof of with the plan of development" P.A. 91-398.
Curiously, the plan of development contains a statement that seems to contemplate this very type of development. At p. 29, 8F.3 states the following purpose: "Provide for an increased resident population which can enjoy the convenience of living in or adjacent to the center" (emphasis added). This is precisely what the plaintiff's proposal would accomplish.
The decision of the commission and the reasons cited for the decision are not supported by sufficient evidence in the record. The defendant has failed to sustain its burden of proof as to any of the considerations which it was required to apply under 8-30g. Accordingly, the commission's decision is reversed.
MOTTOLESE, J.