HAROLD W. WILSON, SR., ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF MANCHESTER ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

20

Argued October 13—decided November 23, 1971

*John D. LaBelle,* with whom was *Laurence P. Rubinow,* for the appellants (plaintiffs).

*Eugene T. Kelly,* for the appellee (defendant England) ; with him was *John F. Shea, Jr.,* for the appellee (named defendant).

SHAPIRO, J. On May 1, 1969, the defendant W. Harry England, hereinafter referred to as England, together with Louise C. England, applied to the defendant town planning and zoning commission,

hereinafter called the commission, for a change of zone for approximately five acres of land, comprising three separate zone classifications designated as business II, residence B and residence A, to a single zone classification of business III. On October 6, 1969, the commission held a public hearing on the application. On October 27, 1969, the application was approved by the commission, to become effective November 3, 1969, subject to certain conditions not material to our disposition of this case. The plaintiffs, aggrieved owners of property located within 500 feet of the rezoned area, appealed to the Court of Common Pleas and from a judgment of that court dismissing their appeal have appealed to this court.

The subject property is situated partly on a curve in a four-lane highway known as East Center Street and partly on a two-lane highway known as Middle Turnpike East. East Center Street and its continuation onto Middle Turnpike East is a portion of routes 6 and 44A, the principal east-west highway through Manchester. This property is in an area commonly known as the Manchester Green section wherein is situated the intersection of Middle Turnpike East, East Center Street and Woodbridge Street. The portion of land with a frontage of 276 feet along Middle Turnpike East, comprising .771 of an acre, has a depth of 125 feet and was zoned business II; the portion with a frontage of 330 feet along East Center Street, comprising 1.332 acres, has a depth of 150 feet and was zoned residence A; and the remainder, rear land comprising 2.911 acres, was zoned residence B. The subject land, fronting on the two highways, is separated along the highway curve by a triangular plot having a street frontage of approximately 270 feet, comprising land of the state of

Connecticut and land and the clubhouse with adjacent parking space of the Veterans of Foreign Wars. On the land in residence A zone formerly stood an old two-story frame dwelling. The business II portion of the land is utilized for small commercial uses. The record discloses that at the time of the hearing the greater portion of the land, in residence B zone, contained buildings formerly used by the England Lumber Yard, which had operated under a nonconforming use. The general character of the area immediately north and east of the subject property and fronting on Middle Turnpike East was commercial. In the area, in addition to a school, two churches and a convalescent home, there were two gasoline service stations, two restaurants, a branch bank, a supermarket, a package store, a tavern and an office building. Plymouth Lane, a residential street, starts on East Center Street at a substantial distance southwest of the subject property and then curves and ends at the rear of the property. Most of the opposition to the zone change has come from the residents of Plymouth Lane.

The commission gave the following reasons for granting the change of zone: "It is the opinion of the Commission that the existing land-use of Residence A and Residence B are inappropriate for this land because of the prevailing land uses in the vicinity and that a land-use of Business III is the highest and best use of this land, especially because a covenant is applied to the land which will protect the abutting residential properties by requirement of a buffer zone and a restriction of the extension of Plymouth Lane."

The plaintiffs have assigned error on various grounds. The error that is dispositive of this appeal, however, and which we shall discuss, is the claim

that the court erred in holding that the granting of the change of zone did not create and aggravate a traffic hazard. General Statutes § 8-2 provides, in part, that zoning regulations "shall be designed to lessen congestion in the streets." We have held that "[i]t is not the over-all volume of daily traffic, but 'congestion in the streets,' that is, density of traffic, which is referred to in the statute." *Pecora* v. *Zoning Commission*, 145 Conn. 435, 440, 144 A.2d 48.

At the public hearing held before the commission on October 6, 1969, a qualified traffic engineer testified in behalf of England regarding the then existing highway traffic volume as well as various contemplated traffic controls and future traffic volume. The appendices to the briefs and the record indicate that he was the only such expert to testify. He stated that "we are perfectly aware that on East Middle Turnpike and the intersection of East Center St., there is presently a traffic control problem" and that he had discussed this with the state highway department. He spoke of "a project on the drawing boards to widen the highway within the present right-of-way so that there will be at least 4 travel lanes and eliminate the present congestion that does occur at certain times of the day. . . . [T]hey are aware of the congestion that occurs here at Manchester Green." He referred to a traffic control project which "is supposed to be undertaken shortly" and that if "two signals were interconnected" he was sure "that part of the present difficulty at the location would disappear." He also stated that a traffic count by the state highway department in 1966 showed that over 21,000 vehicles, during a twenty-four-hour period passed immediately in front of the subject site; that a traffic count on a fair day in August, 1969, a typical day, showed that between

1:30 p.m. and 5:30 p.m. 6100 vehicles passed the intersection fronting it; and that the subject property, to be used as a shopping center, involves in excess of 200 parking spaces which "will probably turn over 5 times, meaning 1,000 vehicles in and 1,000 vehicles out." His written report, which was presented to the commission on the night of the hearing, stated that the construction of route 6, as a new limited access highway southerly of Manchester, would remove a significant volume of through traffic from East Center Street.and Middle Turnpike East; that the state highway department proposed modernization of various traffic signal arrangements; and that traffic departures from the easterly driveway of the subject site "to the north and east surely can be accommodated either by signalization of Vernon Street[1] or by the widening of Route 6 which is in prospect." His written report concluded: "The anticipated traffic can be readily accommodated by the proposed improved highway travelway and anticipated modernized controls."

In the case before us, it is clear that traffic congestion in the area affecting the subject property already existed and would be aggravated by the addition of further traffic resulting from the change of zone. From the record before us it appears that the commission had before it the testimony of this traffic engineer in which he placed reliance on the "proposed" widening of the highway, on the "contemplated" installation and modernization of traffic controls and on the "prospect" of construction or widening of route 6. As explained by him, all these factors were vital to control the traffic in

---

[1] Vernon Street intersects Middle Turnpike East near the northeast corner of the subject property.

the area directly related to the subject property. The appendices to the briefs and the record are completely devoid of any evidence before the commission, if in fact any such evidence was produced, coming from the town or an agency of the state of Connecticut that acknowledged or verified when and how these alleged changes were to be made in order to affect the density of traffic in the area. Our law is clear that the commission has no authority or control over such matters. *Brustein* v. *Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523; *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746.

We have had occasion to consider similar situations in which the zoning authority had no control over street or highway improvements affecting zoning requirements. See *Brustein* v. *Zoning Commission,* supra; *Luery* v. *Zoning Board,* 150 Conn. 136, 145, 187 A.2d 247; *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 326, 150 A.2d 312; *Gordon* v. *Zoning Board,* supra. These cases indicate that a change of zone which is dependent for its proper functioning on action by other agencies over which the zoning commission has no control cannot be sustained unless, at least as in the *Luery* case, the necessary action appears to be a probability. *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395; *Luery* v. *Zoning Board,* supra. In the absence of some reasonable assurance, which the record before us does not furnish, that provision would be made for the requisite highway and traffic flow changes for the purposes of alleviating traffic congestion the commission had no authority to change the zone. It acted in a manner directly contrary to the mandate contained in § 8-2. The trial court erred in sustaining the action of the commission and in dismissing the appeal.

26

The remaining assignments of error require no discussion.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.