WAYNE C. GERLT *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF
SOUTH WINDSOR ET AL.
(SC 18150)

Norcott, Katz, Palmer, Zarella and Sullivan, Js.

Argued September 5, 2008—officially released February 10, 2009

*Gwendolyn S. Bishop*, with whom were *Paul T. Smith*, and, on the brief, *Paul W. Smith*, for the appellant (plaintiff).

*John P. Casey*, with whom, on the brief, was *Brian R. Smith*, for the appellee (named defendant).

*Charles D. Ray*, with whom, on the brief, were *Matthew A. Weiner* and *William H. Narwold*, for the appellee (defendant Evergreen Walk, LLC).

*Gerald L. Garlick*, with whom, on the brief, was *Katherine E. Abel*, for the appellee (defendant Poag and McEwen Lifestyle Centers-Connecticut, LLC).

*Opinion*

SULLIVAN, J. The named defendant, the planning and zoning commission of the town of South Windsor (commission), approved the site plan application of the defendant, Poag and McEwen Lifestyle Centers-Connecticut, LLC (Lifestyle), for the development of certain property owned by the defendant, Evergreen Walk, LLC (Evergreen Walk), on the west side of Buckland Road in the town of South Windsor.[1] The plaintiff, Wayne C. Gerlt, then appealed from the approval to the trial court claiming, inter alia, that the approval was invalid because: (1) it was premised on the assumption that there would be public access to the development over easements on land owned by the town of South Windsor (town), when the granting of the easements was not reasonably probable at the time of the approval and the easements subsequently were declared invalid; and (2) the approval was based on the commission's prior unlawful approval of a general plan of development. The trial court dismissed the appeal on the grounds that: (1) the town had intended to grant easements at the time of the approval; and (2) the commission lawfully had approved the general plan of development. The plaintiff then brought this appeal[2]

---

[1] We refer to the commission, Lifestyle and Evergreen Walk collectively as the defendants, and individually by name when appropriate.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

challenging these conclusions. The defendants claim, as an alternate ground for affirmance, that the trial court improperly determined that the plaintiff was aggrieved. We conclude that the trial court properly determined that the plaintiff was aggrieved and that the site plan approval was not invalid because the easements had not been granted at the time of the approval. We also conclude, however, that the trial court improperly rejected the plaintiff's claim that the site plan approval was unlawful because the commission's approval of the general plan of development, on which the site plan application was based, was unlawful. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In June, 2001, pursuant to § 8.1.2.1 of the South Windsor zoning regulations,[3] Evergreen Walk submitted an application for a general plan of development to the commission in which it proposed to construct and operate a complex of retail, office, lodging and recreational facilities on a 232 acre property located on Buckland Road in South Windsor. After the commission approved the general plan of development, Lifestyle submitted a site development plan for a project consisting of fourteen retail and office buildings on a 46.5 acre portion of the property. The site plan showed that one of two private roads that provided access to the proposed development and portions of a parking

[3] Section 8.1.2.1 of the South Windsor zoning regulations provides: "A General Plan of Development may be submitted for the purpose of having the Commission approve of the proposed conceptual development of a site. The purpose of a General Plan of Development is to show proposed land use, building layout, proposed intensity of development (including coverage ratio, setbacks, parking count, building height), general layout of utility systems and location, circulation and street/road networks, drainage systems and location, open space, impervious areas, and recreation areas. The intention of this general plan is to show details visible to any viewer. The Commission may decide to hold a public hearing on the General Plan of Development. The Commission may require submission of the General Plan of Development to the Architectural and Design Review Committee."

lot and associated landscaping were located on land owned by the town. The town land was part of a larger property that the town recently had purchased from the state. Shortly after the purchase, the town council had considered a resolution providing in relevant part that "it is the [t]own's intent to convey these parcels subject to [r]eferendum approval, to Evergreen Walk . . . for market value, to be used as part of its development on Buckland Road . . . ." The resolution also provided in relevant part that "the [t]own must provide a letter, as a property owner, to the [commission] indicating that it has no objection to the filing of an application by Evergreen Walk . . . for a project planned for Buckland Road . . . ." Because of concerns that a sale of the land effectively would subject the proposed development to a referendum under § 314 of the town charter,[4] the language pertaining to the sale was deleted from the resolution, but the portion of the resolution authorizing a letter to the commission was adopted.

When Lifestyle submitted its site plan application, it included a letter from the town manager to the director of planning authorizing Lifestyle and Evergreen Walk to include the town's property in the application. The letter stated that "[i]t is expected that an easement or some other form of right-of-way will be granted by the [t]own for use of said property, although the specific terms and nature of this transaction are still being negotiated." In addition, Lifestyle included letters from Evergreen Walk and Bradford Wright, who owned property at 179 Buckland Road that was to be used in connection with the development, stating that Lifestyle was author-

[1] Section 314 of the South Windsor town charter provides in relevant part: "No resolution authorizing the issuance of bonds or notes or the sale or conveyance of real property having a value of more than $25,000 shall become effective until the same has been approved at a referendum called by the council for such purpose. . . ." See *Gerlt* v. *South Windsor*, 284 Conn. 178, 183 n.6, 931 A.2d 907 (2007).

ized to include the land owned by them in the site plan application. After conducting public hearings on the site plan application, the commission approved it.

The plaintiff, who owns property at 112 Deming Street in South Windsor that is within 100 feet of Evergreen Walk's property, appealed from the approval to the trial court pursuant to General Statutes § 8-8.[5] The plaintiff claimed that the approval was illegal because the commission had "approved the application for a site plan . . . without receiving the necessary reports and information from other boards and commissions and such information from [Lifestyle] as required by law." The plaintiff also claimed that the commission's approval of the general plan of development was illegal because the commission had no statutory authority to approve it.[6] Thereafter, Evergreen Walk and Lifestyle filed a motion to dismiss the appeal on the ground that the plaintiff was not statutorily aggrieved because he did not own land within 100 feet of the portion of the property that was the subject of the site plan application.[7]

---

[5] General Statutes § 8-8 (a) (1) provides in relevant part: "In the case of a decision by a . . . combined planning and zoning commission . . . 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

[6] The plaintiff's complaint is somewhat unclear as to whether he was challenging the commission's authority to approve the site plan application or its authority to approve the prior application for a general plan of development. In his complaint, he referred to both the site plan application and the general plan of development application as the "plan of development." The plaintiff later clarified that he was claiming that the commission had premised its approval of the site plan application on its approval of the general plan of development and that the latter approval was unauthorized. As we discuss more fully later in the body of this opinion, the plaintiff directly challenged the validity of the commission's approval of the general plan of development in the companion case of *Gerlt* v. *Planning & Zoning Commission*, 290 Conn. 300, 963 A.2d 24 (2009), which was released on the same date as this opinion.

[7] Evergreen Walk and Lifestyle filed a supplemental motion to dismiss the appeal on the ground that the plaintiff had not participated in the site

Meanwhile, the town and Evergreen Walk had entered into an agreement whereby the town granted Evergreen Walk a permanent right to use the land owned by the town in connection with the proposed development. The plaintiff brought a separate action in the trial court challenging the legality of that agreement on the ground that it constituted a conveyance of real property and, therefore, should have been subject to the referendum requirement of § 314 of the town charter. See *Gerlt* v. *South Windsor*, 284 Conn. 178, 183 n.6, 931 A.2d 907 (2007). In May, 2004, the trial court concluded that the agreement was null and void because the town had failed to hold a referendum on the conveyance. Id., 184–85. This court ultimately agreed with that conclusion. Id., 192. Specifically, this court concluded that the agreement constituted an easement and, as such, was a conveyance of real property subject to § 314 of the town charter. Id., 190–91.

In its memorandum of decision in the present case, which was rendered after the trial court's judgment voiding the easement agreement but before this court's decision affirming that judgment, the trial court concluded that the plaintiff was statutorily aggrieved. The trial court also concluded that the invalidation of the easement agreement in the separate action did not render invalid the commission's approval of the site plan application in the present case. Finally, the trial court concluded that, because it had concluded in a separate case; see footnote 6 of this opinion; that the commission's approval of the general plan of development was valid, the approval of the site plan application, which was premised on the general plan of development, was valid.

plan application proceedings before the commission and, therefore, had not exhausted his administrative remedies. The trial court ultimately denied that motion and that ruling is not at issue in this appeal.

This appeal followed. The plaintiff claims that the trial court improperly concluded that the approval of the site plan application was valid when Lifestyle had not obtained the easements over the town's property before submitting its application. He further claims that the trial court improperly concluded that the commission's approval of the general plan of development was valid and argues that, because the general plan of development was invalid, the site plan approval also was invalid. The defendants claim, as an alternate ground for affirmance, that the plaintiff was not aggrieved because he does not own property within 100 feet of the portion of the property that is the subject of the site plan application. We conclude that the trial court properly concluded that the plaintiff is aggrieved and rejected the plaintiff's claim that the approval of the site plan application was invalid because Lifestyle had not obtained easements over the town's property at the time that it was approved. We also conclude, however, that, in light of our decision in the companion case of *Gerlt* v. *Planning & Zoning Commission*, 290 Conn. 300, 963 A.2d 24 (2009), namely, that during subsequent site plan proceedings, the commission improperly had treated as binding certain decisions and conditions on which the approval of the general plan of development was premised, the trial court improperly dismissed the plaintiff's appeal.

I

We first address the defendants' alternate ground for affirmance that the plaintiff is not statutorily aggrieved under § 8-8 because he does not own property within 100 feet of the land that is the subject of the site plan application. We disagree.

At the outset, we set forth the standard of review. Whether the plaintiff was statutorily aggrieved under § 8-8 under the undisputed factual circumstances of this

case is a question of statutory interpretation subject to plenary review. See *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 665–66, 560 A.2d 975 (1989).

We begin with the language of the statute. Section 8-8 (a) (1) provides in relevant part: " '[A]ggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." In construing this language, we do not write on a blank slate. In *Caltabiano* v. *Planning & Zoning Commission*, supra, 211 Conn. 664, the defendant Roger L. Phillips filed with the named defendant planning and zoning commission, an application for a special exception to allow for excavation on a 3.8 acre parcel within his larger 110 acre property. The commission approved the application. Id. The plaintiffs, John Caltabiano and Debra Cadwell, appealed from the decision and the trial court concluded that, even though Caltabiano's property abutted, and Cadwell's property was within 100 feet of, the larger 110 acre property; id., 670; they were not aggrieved under § 8-8 because their properties were not within 100 feet of the 3.8 acre parcel. Id., 665. On appeal, this court concluded that the "land involved" language of § 8-8 refers to the entire property, even when only a portion of the property is the subject of the commission's decision. Id. Accordingly, we concluded that Caltabiano and Cadwell were aggrieved property owners. Id., 670.

The defendants in the present case argue that the present case is distinguishable from *Caltabiano* because the parcel on which the proposed development is located "is a distinct parcel in terms of its use within a multiuse development and in terms of the application to the commission, which was only one of several distinct applications for specific uses on several distinct parcels within the Evergreen Walk site." We are not

persuaded. In *Caltabiano*, the property also was subject to multiple uses, namely, the excavation activities on the smaller 3.8 acre parcel and the nonexcavation uses on the remainder of the property. Id., 663. Accordingly, we conclude that *Caltabiano* applies to the present case and that the trial court properly concluded that the plaintiff is aggrieved.

II

We next address the plaintiff's claim that the trial court improperly determined that the commission's approval of the site plan application was valid when: (1) Lifestyle had not yet obtained the easements over the town's property that were required for access to the proposed development at the time of the approval; and (2) after Lifestyle had obtained the easements, they were invalidated. We disagree.

Before addressing the substance of the plaintiff's claim, we set forth the standard of review. "It is axiomatic that the review of site plan applications is an administrative function of a planning and zoning commission. *Norwich* v. *Norwalk Wilbert Vault Co.*, 208 Conn. 1, 12, 544 A.2d 152 (1988). When a commission is functioning in such an administrative capacity, a reviewing court's standard of review of the commission's action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion . . . ." (Internal quotation marks omitted.) *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 440, 908 A.2d 1049 (2006).

With respect to the commission's factual findings, "a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the commission] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court

would have reached the same conclusion, but whether the record before the [commission] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a [commission's] findings, it cannot substitute its judgment for that of the [commission]. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The [commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 559–60, 916 A.2d 5, on remand, 102 Conn. App. 863, 927 A.2d 958 (2007).

In support of his claim that the commission abused its discretion in approving the site plan application, the plaintiff relies on this court's decision in *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 301 A.2d 244 (1972). In that case, the defendant zoning commission had approved an application for a zone change premised on the hearsay testimony of counsel for the applicants and the town's director of development that they had been told by members of the state highway department that the main access road serving the proposed development would be improved and widened. Id., 50–51. The plaintiffs, abutting landowners, appealed from the decision claiming that there was no reasonable probability that the improvements would be made. Id., 48–49. The trial court dismissed the appeal and the plaintiffs appealed to this court. Id., 44. On appeal, this court noted that it previously had held that "a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless . . . the necessary action appears to be a *probability*." (Emphasis in original; internal quotation marks omit-

ted.) Id., 50. This court concluded that the hearsay testimony regarding the proposed road improvements was not sufficient to establish a reasonable probability that the road would be improved and, accordingly, set aside the judgment of the trial court. Id., 51–52; see also *Wilson* v. *Planning & Zoning Commission,* 162 Conn. 19, 25, 291 A.2d 230 (1971) (commission lacks authority to approve application for zone change when change "is dependent for its proper functioning on action by other agencies over which the zoning commission has no control . . . unless . . . the necessary action appears to be a probability"); *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395 (1970) (same); *Faubel* v. *Zoning Commission,* 154 Conn. 202, 211, 224 A.2d 538 (1966) (same).

The defendants in the present case contend that this court's holding in *Jarvis Acres, Inc.,* was modified in *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 483, 562 A.2d 1093 (1989), on appeal after remand, 219 Conn. 139, 592 A.2d 155 (1991), in which this court held that an approval of a site plan for a specially permitted use may be conditioned on the action of another agency as long as the other agency has the "opportunity to review the . . . [site] plans . . . and . . . the record need not indicate whether the [other agency] is likely to approve the . . . site plans." See also *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 307, 278 A.2d 799 (1971) ("where an exception or a special permit is granted and the grant is otherwise valid except that it is made reasonably conditional on favorable action by another agency . . . over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition"). The rationale for this rule is that it allows "greater flexibility in zoning administration by avoiding stalemates between a zoning authority and

other municipal agencies over which it has no control."
*Blaker* v. *Planning & Zoning Commission*, supra, 482.

It is important to note, however, that *Blaker* and *Lurie* involved the *conditional* approval of a site plan application for a specially permitted use, while *Jarvis Acres, Inc.*, *Wilson*, *Stiles* and *Faubel* all involved zone change approvals that were *not conditioned* on another agency's action but, instead, were premised on the zoning authority's factual finding that the action would occur.[8] In *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 594, 409 A.2d 1029 (1979), this court noted that *Stiles* did not apply to the conditional approval of a special permit application under review in *Lurie*, because a zoning authority has the statutory authority under General Statutes § 8-2, which governs special permit applications, to impose conditions on a special permit approval. Cf. id., 592–94 (strict *Stiles* rule applies to approval of subdivision application because zoning authority has no statutory authority to impose condition on approval of subdivision).

The significant distinction between *Jarvis Acres, Inc.*, *Wilson*, *Stiles* and *Faubel*, on the one hand, and *Blaker* and *Lurie*, on the other hand, is that the unconditional approvals at issue in the former cases would have remained valid even if the other agency had failed to take the action required for the proper functioning of the new zones, while, in the latter cases, the approvals

---

[8] Compare *Blaker* v. *Planning & Zoning Commission*, supra, 212 Conn. 481 (commission attached conditions to approval of site plan application for specially permitted use that required further approval of conservation commission) and *Lurie* v. *Planning & Zoning Commission*, supra, 160 Conn. 297–98 (commission approved special permit application conditioned on town's improvement of roads) with *Jarvis Acres, Inc.* v. *Zoning Commission*, supra, 163 Conn. 44 (commission approved zone change subject to conditions not relevant to appeal), *Wilson* v. *Planning & Zoning Commission*, supra, 162 Conn. 21 (same), and *Stiles* v. *Town Council*, supra, 159 Conn. 216 (same); *Faubel* v. *Zoning Commission*, supra, 154 Conn. 206 (commission approved zone change unconditionally).

would have been invalid unless the other agency took the required actions. It is clear that, when an approval is unconditional, the factual assumptions on which the approval is premised, including the reasonable probability of a required action by another agency, must be supported by substantial evidence in the record at the time of the approval. When an approval will not be operative until a specific action occurs, however, there is no need to establish on the record that the action probably will occur because there is no risk to the public interest if the action does not occur.[9] It is clear, therefore, that *Blaker* and *Lurie* do not apply to *unconditional* approvals, such as the one under review in *Jarvis Acres, Inc.*, that require action by another agency for their proper functioning.

In the present case, the plaintiff claims that the commission's *unconditional* approval of Lifestyle's site plan application for a permitted use was invalid because the town had not yet granted the easements over the properties shown on the site plan and it was not reasonably probable that it would do so. We conclude, therefore, that this claim is governed by *Jarvis Acres, Inc.* Thus, the question before us is whether the record contains substantial evidence that it was reasonably probable that the town would grant the easements.[10]

[9] As we have indicated, a different rule applies to subdivision applications, the approval of which cannot be subject to conditions. See *River Bend Associates, Inc.* v. *Planning Commission,* 271 Conn. 41, 64, 856 A.2d 959 (2004) ("purpose of the rule disfavoring conditional approvals of subdivision applications in the absence of a reasonable probability that the condition can be fulfilled within a reasonable time period is to avoid placing subdivision applications in limbo for indefinite periods").

[10] See *Jarvis Acres, Inc.* v. *Zoning Commission,* supra, 163 Conn. 50–51 (record contained insufficient evidence to support conclusion that state road serving proposed development would be improved); *Wilson* v. *Planning & Zoning Commission,* supra, 162 Conn. 24–25 (record contained no evidence that provision would be made for highway and traffic flow changes required to alleviate congestion caused by zone change); *Faubel* v. *Zoning Commission,* supra, 154 Conn. 211 (record contained no evidence that town would supply roads and utilities necessary to comply with zoning laws); cf. *Stiles* v. *Town Council,* supra, 159 Conn. 222 (on basis of evidence presented,

In this context, the town's position was identical to that of the other landowners whose property was to be used as part of the proposed development.[11] Like the other landowners, the town provided a letter to the town's director of planning in which it expressly authorized Lifestyle to include its land in the site plan and stated its intent to allow Lifestyle to use the land. We conclude that, like the other landowners' letters, the town's letter constituted substantial evidence that it was reasonably probable that Lifestyle would be permitted to use the town's land. We note that, in the cases where this court has invalidated the approval of a land use application on the ground that there was no reasonable probability that an action necessary for the proper functioning of the new land use would occur, there was *no* evidence that the agency that was required to take the action had any intention of doing so. See footnote 10 of this opinion. We cannot conclude that, in addition to the evidence that the town intended to allow Lifestyle

town council reasonably could have concluded that interstate highways essential to successful operation of proposed development would be constructed).

[11] The defendants contended at oral argument before this court that, because the town was not acting as a government agency in granting the easements, but as a property owner, the cases involving land use approvals premised on an action by another government agency are inapplicable and there was no need for the commission to determine whether the transfer of the easements was reasonably probable. We disagree. The reason that this court concluded in *Jarvis Acres, Inc.*, *Wilson* and *Faubel*, that the zone change approvals were invalid was not that a required action was to be taken by another governmental body, but that the zoning authority had no control over the action and the proposed zone change could not function properly if the action did not occur. See *Jarvis Acres, Inc.* v. *Zoning Commission*, supra, 163 Conn. 50 ("a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless . . . the necessary action appears to be a *probability*" [emphasis in original; internal quotation marks omitted]); *Wilson* v. *Planning & Zoning Commission*, supra, 162 Conn. 25 (same); *Faubel* v. *Zoning Commission*, supra, 154 Conn. 211 (same). Accordingly, we conclude that these cases are implicated *whenever* these concerns are raised.

to use its land, Lifestyle was required to present evidence regarding the legal mechanism by which the town would transfer the property interests to Lifestyle and to identify all potential obstacles to the transfer. Such a requirement would place an undue burden both on applicants and on zoning authorities to conduct a hearing within a hearing on legal and factual matters not within their expertise.[12]

Moreover, it was undisputed in *Jarvis Acres, Inc., Wilson* and *Faubel,* that the zone changes under review could not have functioned properly and would have created a risk to public health and safety if the required action was not taken by the other agency. Although the plaintiff in the present case claims that "[t]he approved site plan requires a successful transfer of the town owned property to the developer because the site plan places improvements upon the town's property," he has pointed to no evidence in the record that the proposed development could not operate or would cause harm to the neighboring area without the easements from the town.[13]

Finally, we reject the plaintiff's claim that the commission's approval of Lifestyle's site plan application

[12] In the present case, for example, the commission would have been required to determine whether the proposed easement was a "conveyance of real property having a value of more than $25,000" and, therefore, was subject to § 314 of the town charter. See footnote 4 of this opinion. If the commission determined that it was, it would have been required to determine the likelihood that the easements would be approved by referendum and, if they were not likely to be approved, whether there was some other mechanism by which the town could allow Lifestyle to use the land.

[13] The record shows that the end of one of two private access roads crosses one parcel of town land and that a small portion of one of several parking lots for the proposed development is located on a separate parcel of town land consisting of two adjoining lots. Nothing in the record indicates that, if Lifestyle could not use this land, it would be unable to relocate the access road or parking spaces. In addition, the plaintiff conceded at oral argument before this court that, if the easements were not approved by referendum, the development would not necessarily be rendered unfeasible because the town could rent its land to Lifestyle.

was invalidated when this court held subsequently that the agreement between the town and Lifestyle was invalid because it constituted an easement and the town had failed to subject it to a referendum.[14] This court previously has held that "an appeal from an administrative tribunal should ordinarily be determined on the record made before that tribunal . . . ." *Beach* v. *Planning & Zoning Commission*, 141 Conn. 79, 80, 103 A.2d 814 (1954). Supplemental evidence may be submitted to the trial court "only if it [is] essential to the equitable disposition of the appeal . . . ." *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 491, 892 A.2d 979 (2006). Because the plaintiff in the present case has pointed to no evidence that the development could not operate properly or would create a risk to the public health and safety if the easements were invalidated, evidence that the easements have been invalidated, at least temporarily, was not essential to the equitable disposition of his appeal. Accordingly, we conclude that, in addressing the plaintiff's appeal, the trial court properly concluded that it need not consider evidence that the easements had been invalidated after the commission had approved Lifestyle's site plan application.

## III

We next address the plaintiff's claim that the commission's approval of the site plan application was invalid because it was premised on an illegal general plan of development. The facts surrounding the commission's approval of Evergreen Walk's general plan of develop-

---

[14] We note that, at the time that the plaintiff filed this appeal in the trial court, this court had not yet released its decision in *Gerlt* v. *South Windsor*, supra, 284 Conn. 178, affirming the judgment of the trial court that the easements were invalid. Accordingly, the plaintiff's arguments to the trial court in the present case that the approval of the site plan application should be invalidated were premised on the judgment of the trial court in *Gerlt* v. *South Windsor*, supra, 178, not on this court's decision affirming that judgment.

ment application are set forth in the companion case of *Gerlt* v. *Planning & Zoning Commission,* supra, 290 Conn. 300, which was released on the same date as this opinion. This court concluded in that case that, "to the extent that the commission determined that the decisions and conditions that underlay its approval of the general plan of development could not be revisited during subsequent site plan proceedings—a circumstance that the defendants implicitly concede—any such determination was in conflict with § 8.1.3 et seq. of the South Windsor zoning regulations and the requirements of [General Statutes] § 8-3 (g), and was, therefore, unlawful." Id., 312. Although this court rejected the plaintiff's request to declare the general plan of development null and void, we held that the plaintiff and other interested parties must have the opportunity "to raise concerns regarding *all* aspects of the proposed development, including the cumulative impact of the separate site plans, during the site plan proceedings"; (emphasis in original) id., 312; and "[w]e recognize[d] that this decision necessarily will have an impact on the proceedings on Evergreen Walk's individual site plan applications." Id., 312.

Accordingly, we conclude in the present case that, to the extent that the commission's approval of Lifestyle's site plan application was premised on decisions and conditions that underlay its approval of the general plan of development and that could not be revisited during these proceedings, the approval was unlawful. We conclude, therefore, that the plaintiff's appeal must be sustained and the matter must be remanded to the commission with direction to allow the plaintiff to raise concerns regarding *all* aspects of the proposed development, including the cumulative impact of the separate site plans.

The judgment is reversed and the case is remanded to the trial court with direction to sustain the plaintiff's

appeal and to remand the matter to the commission for further proceedings according to law.

In this opinion the other justices concurred.