CMB CAPITAL APPRECIATION, LLC *v.* PLANNING
AND ZONING COMMISSION OF THE
TOWN OF NORTH HAVEN
(AC 31523)

Gruendel, Harper and Beach, Js.

Argued June 1—officially released October 12, 2010

*Edward V. O'Hanlan*, with whom, on the brief, were *Peter S. Olson* and *Tyisha S. Hovanec*, for the appellant (defendant).

*Neil R. Marcus*, with whom was *Barbara M. Schellenberg*, for the appellee (plaintiff).

*Opinion*

BEACH, J. This appeal arises from the denial by the planning and zoning commission of the town of North Haven (commission), of an application by the plaintiff, CMB Capital Appreciation, LLC, for site plan approval of an affordable housing development. The plaintiff appealed from the commission's decision to the trial court, pursuant to General Statutes § 8-30g. The court rendered judgment reversing the commission's decision. On appeal, the commission claims that the court improperly (1) ordered it to approve the plaintiff's application conditionally in the absence of evidence that it was reasonably probable that the condition would occur, (2) reversed the commission's decision to deny the plaintiff's application on the basis of drainage problems and (3) determined that there was insufficient evidence to support the commission's denial of the plaintiff's application on the basis of inadequate provision for emergency services. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the commission's appeal. On June 8, 2006, the plaintiff submitted an application to the commission for site plan approval to construct an affordable housing development pursuant to § 8-30g. The application proposed construction of a 350 unit condominium complex. The complex was to accommodate an active adult population aged fifty-five years or older. The commission subsequently held hearings on the application. The North Haven inland wetlands commission (inland wetlands commission) and the North Haven water pollution control authority (authority) also held separate hearings relating to the proposed development, which the commission took into consideration when rendering its decision.[1] On December 5, 2006, the commission denied the application.

Thereafter, on December 28, 2006, the plaintiff filed an amended application pursuant to § 8-30g (h). The amended application, inter alia, increased the proposed number of units from 350 to 396 and removed the age restriction. The commission, the inland wetlands commission and the authority held hearings related to the amended application. On March 12, 2007, the commission denied the plaintiff's amended application for, inter alia, the following reasons: (1) a negative referral from the authority,[2] (2) the existence of "significant/probable" drainage problems and (3) the probability of inadequate provision for emergency services.

The plaintiff appealed to the trial court from the commission's denial of its application.[3] In its memorandum

---

[1] The plaintiff had not submitted formal applications to the authority or the inland wetlands commission at that time.

[2] Again, the plaintiff had not submitted a formal application to the authority.

[3] The plaintiff's appeal to the trial court regarding the North Haven application was consolidated with an appeal that the plaintiff had taken from a decision of the East Haven planning and zoning commission denying its site plan application for the construction of a driveway, recreational golf holes and roadway improvements associated with its proposed affordable housing

of decision, the court found that none of the reasons given by the commission for denying the plaintiff's application met the requirements of § 8-30g. As a result, the court sustained the plaintiff's appeal. The court ordered the commission to approve the plaintiff's amended site plan application subject to the condition that the plaintiff apply to the authority and obtain approval for adequate sewerage service for the proposed development. The commission thereafter filed in this court a petition for certification to appeal, which we granted. This appeal followed.

Our standard of review is as follows. Section 8-30g (g), which governs the plaintiff's affordable housing appeal, provides in relevant part that "the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development . . . ." General Statutes § 8-30g (g). The foregoing determinations are "mixed factual and legal

development in North Haven. This court granted petitions for certification to appeal filed by the planning and zoning commissions of North Haven and East Haven. The planning and zoning commission of East Haven did not file an appeal with this court. The present appeal is filed by the North Haven planning and zoning commission and, as such, concerns only the court's decision regarding the North Haven applications.

We further note that the plaintiff appealed from the denial of both its original and amended application. In its brief to this court, the commission focuses on the denial of the amended application. We focus on the denial of the amended application as well.

determinations, the legal components of which are subject to plenary review. . . . [T]he planning and zoning commission remains the finder of fact and any facts found are subject to the 'sufficient evidence' standard of judicial review." (Citations omitted.) *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 24, 856 A.2d 973 (2004).

"Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted. If the court finds that such sufficient evidence exists, then it must conduct a plenary review of the record and determine independently whether the commission's decision was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, whether the risk of such harm to such public interests clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development. . . . Because the plaintiff['s] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [commission's] decision and the scope of our review of that decision are the same." (Citation omitted; internal quotation marks omitted.) *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 596–97, 872 A.2d 385 (2005).

## I

The commission first claims that the court improperly ordered it to approve the plaintiff's amended application on the condition that the plaintiff formally apply to the authority and obtain approval for adequate sewerage service for the proposed development. The commission argues that a conditional approval was improper

because the evidence did not demonstrate, as the commission argues it must, that it was reasonably probable that the plaintiff would secure approval of a sewerage connection application from the authority, a coordinate agency. In the absence of such evidence, the commission contends, it acted appropriately in denying the plaintiff's amended application. We do not agree.

The following additional facts are relevant. The plaintiff did not submit a formal application to the authority.[4] Rather, as part of the proceedings before the commission, the plaintiff's affordable housing application was referred to the authority for review, comment and recommendation. Following hearings on the matter, the authority issued a negative referral. The commission subsequently based its denial, in part, on the authority's negative referral. In denying the plaintiff's amended application, the commission reasoned, inter alia: "Based upon the [authority's] (4-0) negative referral, the [plaintiff's] sewer connection application will probably be denied by the [authority]. The modifications of adding forty-six units to the development and eliminating the age restriction only exacerbated the problem relative to the original application."

On appeal, the trial court concluded that the negative referral of the authority did not constitute sufficient

[4] "General Statutes § 7-247 (a) defines the powers and duties of water pollution control authorities and provides, inter alia, that they may establish and revise rules and regulations for the supervision, management, control, operation and use of a sewerage system, including rules and regulations prohibiting or regulating the discharge into a sewerage system of any sewage or any stormwater runoff which in the opinion of the water pollution control authority will adversely affect any part or any process of the sewerage system . . . . Under the terms of the statute, a municipality has wide discretion in connection with the decision to supply sewerage. . . . Although this discretion is not absolute, [t]he date of construction, the nature, capacity, location, number and cost of sewers and drains are matters within the municipal discretion with which the courts will not interfere, unless there appears fraud, oppression or arbitrary action." (Internal quotation marks omitted.) *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 282, 968 A.2d 345 (2009).

evidence to support the commission's denial of the plaintiff's amended application. The court noted that at the time of the negative referral, the plaintiff had not yet submitted a formal sewer application to the authority. It reasoned that the evidence did not indicate that the authority would deny the plaintiff's sewer application, but merely indicated that the plaintiff had not provided sufficient information for it to provide a positive referral. The trial court sustained the appeal, reversed the decision of the commission and remanded the application to the commission for it to approve the amended application subject to the condition that the plaintiff apply to the authority and obtain approval for adequate sewerage service for the proposed development.

We begin by noting that "[t]he scope of the planning commission's authority to grant a conditional approval of [the plaintiff's] application under. . . [§] 8-30g is a question of statutory interpretation over which our review is plenary." *River Bend Associates, Inc.* v. *Planning Commission*, 271 Conn. 41, 55, 856 A.2d 959 (2004).

In resolving this claim we must determine whether it was proper for the court to order the commission conditionally to approve the plaintiff's affordable housing site plan application. A brief overview of the case law regarding conditional approvals offers insight into the resolution of this issue. In *Gerlt* v. *Planning & Zoning Commission*, 290 Conn. 313, 963 A.2d 31 (2009), our Supreme Court distinguished unconditional approvals from conditional approvals. Regarding unconditional approvals from a zoning commission, the court held that an agency action "which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless . . . the necessary action appears to be a probability." (Internal quotation marks omitted.)

Id., 323; see also *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 50, 301 A.2d 244 (1972); *Wilson* v. *Planning & Zoning Commission*, 162 Conn. 19, 25, 291 A.2d 230 (1971); *Stiles* v. *Town Council*, 159 Conn. 212, 221, 268 A.2d 395 (1970); *Faubel* v. *Zoning Commission*, 154 Conn. 202, 211, 224 A.2d 538 (1966). In *Gerlt*, the Supreme Court stated that "*Jarvis Acres, Inc.*, *Wilson*, *Stiles* and *Faubel* all involved zone change approvals that were not conditioned on another agency's action but, instead, were premised on the zoning authority's factual finding that the action would occur. . . . [T]he unconditional approvals at issue in [those] cases would have remained valid even if the other agency had failed to take the action required for the proper functioning of the new zones, while, in . . . cases [where approvals have been conditioned on approval by other agencies], the approvals would have been invalid unless the other agency took the required actions." *Gerlt* v. *Planning & Zoning Commission*, supra, 325–26.

The second type of case, as explained by *Gerlt*, concerns conditional approvals from a commission. In one such case, *Lurie* v. *Planning & Zoning Commission*, 160 Conn. 295, 278 A.2d 799 (1971), our Supreme Court held that "where an exception or a special permit is granted and the grant is otherwise valid except that it is made reasonably conditional on favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition." Id., 307. In *Blaker* v. *Planning & Zoning Commission*, 212 Conn. 471, 562 A.2d 1093 (1989), our Supreme Court elaborated on its holding in *Lurie* by stating: "Our holding [in *Lurie*] was intended to achieve greater flexibility in zoning administration by avoiding stalemates between a zoning authority and other municipal agencies over which it has no control. . . . Nowhere did we intimate, therefore, that, in order to

be valid, conditional approval requires evidence that the other agency will act favorably on the future request. . . . Further, it would be contrary to the policy of allowing a planning and zoning commission to make the first move and the decision as to the conditions under which it would approve the issuance of a permit . . . . This is so even though the project may subsequently fail to materialize because one or more of the conditions has for any reason not been met. . . . We conclude, therefore, that the phrase reasonably conditional in *Lurie* contemplates giving the other agency, over which a planning and zoning commission has no control, the opportunity to review the revised plans, thereby furthering the goal of cooperative action among municipal agencies, and that the record need not indicate whether the conservation commission is likely to approve the revised site plans." (Citations omitted; internal quotation marks omitted.) Id., 482–83. Our Supreme Court noted in *Gerlt* v. *Planning & Zoning Commission,* supra, 290 Conn. 325, that *Lurie* and *Blaker* both involved conditional approval of site plan applications for a specially permitted use. The court further explained that "the approvals [in *Lurie* and *Blaker*] would have been invalid unless the other agency took the required actions. . . . When an approval will not be operative until a specific action occurs, however, there is no need to establish on the record that the action probably will occur because there is no risk to the public interest if the action does not occur."[5] Id., 325–26.

None of these cases, however, were affordable housing cases. In *Kaufman* v. *Zoning Commission,* 232 Conn. 122, 653 A.2d 798 (1995), our Supreme Court considered the effect of the affordable housing land

---

[5] The court in *Gerlt* v. *Planning & Zoning Commission,* supra, 290 Conn. 326 n.9, noted that "a different rule applies to subdivision applications, the approval of which cannot be subject to conditions."

use appeals act; General Statutes (Rev. to 1991) § 8-30g; on an application for a zone change. In *Kaufman*, the Danbury zoning commission denied the plaintiff's application for a zone change, which was made in connection with an application for an affordable housing development. *Kaufman* v. *Zoning Commission*, supra, 124, 127. The trial court reversed the zoning commission's decision, concluding that the zoning commission was required to approve the plaintiff's application and thereby remanded the case to give the zoning commission the opportunity to impose reasonable conditions and changes with respect thereto. Id., 128. On appeal to the Supreme Court, the zoning commission argued, citing *Faubel* v. *Zoning Commission*, supra, 154 Conn. 202, that the evidence of record supported its decision to deny the application because the proposed affordable housing development would result in excessive traffic on existing roads. *Kaufman* v. *Zoning Commission*, supra, 162. The Supreme Court noted that its holding in *Faubel* "reflects the policy concern that, in the face of evidence of impending harm to the public interest, zoning commissions should not grant zone changes without assurances, in the record, that preventive steps will be taken to minimize the risk of harm." Id., 163. The court reasoned, however, that "[t]he concerns that underlay *Faubel* do not . . . control the decision in this case if the commission has the authority to grant the application for a new zone on the condition that the planning commission approves, and the plaintiff makes, the necessary road improvements. If the roads are not built, the existing zone will continue in place, and the public interests in traffic control will remain protected. If the roads are built, on the other hand, the public interests in traffic control will not be adversely affected. In other contexts, therefore, we have allowed zoning commissions to approve a proposed development project on the condition that the applicant take

other action, even when the other action required another agency's approval, and even when there was no evidence that the other agency will act favorably on the future request." (Internal quotation marks omitted.) Id.

The court in *Kaufman* concluded that the zoning commission was empowered to grant a conditional approval, but noted that this authority did not "demonstrate that the commission was . . . required to do so. In our past cases approving conditional zoning, we have described conditional zoning not as an obligation, but as a means of achieving greater flexibility in zoning administration . . . ." (Internal quotation marks omitted.) Id., 165. The court held, however, that "[i]n light of the statutory requirements of § 8-30g and the specific facts presented in this case"; id.; a conditional approval was required because the zoning commission had not demonstrated "that its denial of the plaintiff's affordable housing application had been 'necessary to protect substantial public interests'; General Statutes § 8-30g (c) (2) [now § 8-30g (g) (1) (A)]; [in other words] the commission was required [but failed to] show that, on the basis of the evidence in the record, it reasonably could have concluded that it could not simultaneously grant the zone change and protect the public interest. In this case, however, all the evidence in the record showed that the potential traffic problem would be solved by making certain road improvements. The plaintiff, furthermore, agreed to make those improvements. On this record, therefore, the commission's decision to deny the zone change was not 'necessary to protect substantial public interests.' General Statutes § 8-30g (c) (2) [now § 8-30g (g) (1) (A)]." *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 165–66. Accordingly, the court concluded: "In the context of an application to build affordable housing . . . we agree with the trial court that, on the present record, the conditional granting of a zone change was not only authorized but required." Id., 164.

In accordance with *Kaufman*, the commission in the present case was required to approve the plaintiff's amended application conditioned upon the plaintiff obtaining approval from the authority. As in *Kaufman*, the conditional approval in the present case protects against the risk of harm to the public interests. If the plaintiff's application is approved by the authority, then the public interests in maintaining adequate sewage systems will not be adversely affected. See id., 163. If, however, the plaintiff does not obtain approval from the authority for its sewer application, then the plaintiff cannot implement its proposed development and the public interests in maintaining adequate sewage systems will remain protected. See id. A conditional approval, therefore, protects the public interests in maintaining adequate sewage systems and "advances the legislative purpose of encouraging the construction of affordable housing. [P]ublic officials are expected to cooperate in helping [affordable housing] to [be] locate[d] in their community . . . but it is hardly reasonable to expect that a [coordinate agency] would make the necessary expenditures and changes without knowing that when such work was completed the . . . zoning commission would approve and permit the project which the work was designed to make possible, nor, logically, should the commission grant an unconditional permit for a project when in its judgment the project was impermissible unless off-site work were done. In such circumstances it is entirely reasonable and logical that the . . . zoning commission which is entrusted with large powers . . . should be the agency to make the first move and the decision as to the conditions under which it would approve the [project]. This is so even though the project may subsequently fail to materialize because one or more of the conditions has for any reason not been met." (Internal quotation marks omitted.) Id., 164–65.

The commission points to nothing in the record establishing that its denial of the plaintiff's application was necessary to protect substantial public interests—or in other words, the commission has not shown that it reasonably could have concluded that it could not simultaneously grant the site plan application and protect the public interests. See id., 165–66; see also General Statutes § 8-30g (g) (1) (A). The plaintiff had not yet submitted a formal application and the authority's negative referral was preliminary in nature. The evidence in the record shows that the authority anticipated that any potential sewerage problem would be addressed when the plaintiff submits a formal application to it. Richard A. Werner, chairman of the authority, stated in a November, 2006 letter to the chairman of the commission regarding the plaintiff's original application, that he had concerns "that the sewage flow would exceed design capacity" and had concerns with "[t]he applicant's suggestion of metering and bonding [because] . . . the [authority's] regulations do not permit bonding." Werner then stated, however, that "it is the [authority's] further understanding that the specific issues of design capacity, construction and bonding would be dealt with at the time that a sewer connection application is made to the [authority]." In a March 5, 2007 letter written in connection with the plaintiff's amended application to the commission, Werner explained that the negative referral of the authority was based on a lack of clarification at the present time regarding how to minimize certain potential long-term maintenance issues. The fact that the authority provided negative referrals does not necessarily mean that the agency would deny a formal application made by the plaintiff. Thus, contrary to the commission's assertion, it simultaneously could have granted the site plan application and protected the public interests in adequate sewerage service availability.